With that one. All right. Yeah. Yeah. Okay. All right. Thank you, sir. Would you please come forward? Go ahead. Good morning. You know what? How much are you reserving, sir? Oh, yes. I'd like to reserve three minutes of my time for a bottle, please. Three minutes. Yes, sir. Go ahead. All right. Good morning, Your Honors. Andrew Jaya for Appellate National Labor Relations Board. This interlocutory appeal of a preliminary injunction is part of more than a decade of litigation that has sprawled across forums. Well, that's great. That was wonderfully delivered, and now we've got a bunch of questions. Oh, sure. So let me ask you this. So you filed an appeal in the district court challenging a plan. Now, do you agree that at that point, the district court had appellate jurisdiction under 158A1? Surely it had appellate jurisdiction over the bankruptcy confirmation order. That's correct. Okay. So why isn't the request for an injunction simply a part of that existing jurisdiction under 158A1? Yes. Well, I understand the injunction request came a little later, but we know we're there, and we're there properly. Right. Well, to answer that question, setting aside the question of whether the bankruptcy court in the first instance could have issued this particular jurisdiction, exercising its original jurisdiction, I would note sort of two key issues sort of in response. First, the broad injunctive powers afforded bankruptcy courts in exercising their original jurisdiction under Section 105 of the Bankruptcy Code simply don't apply to district courts sitting an appeal of bankruptcy confirmation orders. That's because 105 refers to the court's jurisdiction, the grounds for the court's jurisdiction, and so there is a statutory ground. The second reason is to think just sort of logically about what injunctive relief is and what an injunction pending appeal is normally. An injunction pending appeal typically follows denial of an injunction at the initial trial court phase where there has been an opportunity for fact-finding. The appellate court will then pass on the question of whether an injunction is necessary to preserve the status quo while ruling on the legal merits of the denial of the injunction below. But that is a very limited inquiry focused on just the law and not depending on any new fact-finding at that level. Can you articulate the grounds on which the court enjoined the NLRB for proceeding in the case? It is, to be frank, Your Honor, I mean, it is, well, I guess I interpret your question as asking sort of what are the jurisdictional grounds. The basis, yes. The basis, yeah. It is, in fact, a little bit difficult to understand what the court was attempting to do here jurisdictionally. Do you know if the court had grounds, sufficient grounds to enjoin the NLRB? Yes, no, I mean, if we were to back out the kind of confusing procedural posture and also the styling of the injunction as an injunction pending appeal and just think about when this context has arisen or when this issue has arisen in other contexts, how courts have dealt with it. There is controlling Supreme Court precedent here under Myers v. Bethlehem Steel, which essentially says that district courts are without jurisdiction to enjoin the proceedings of the National Labor Relations Board on questions under the National Labor Relations Act. Yeah, it's a very well-settled precedent and it controls the issue here squarely. Let me just say here that district court did not have legitimate grounds. That is correct. To enjoin the NLRB from proceeding in the case. That is correct, Your Honor. Myers is concerned about the usurpation of power, right? And the question I have here is what's the usurpation? Now, put aside the injunction for a second. Let's just talk about 9.4 because we're trying to figure out. In the first instance, what's the jurisdictional question? And then in the second instance, whether the injunction is proper. Right. And I think there's question about whether the injunction is proper, but just on the jurisdictional issue. That's why I asked what I did to begin with. But substantively, when you look at the plain text of 9.4, it exempts the NLRB from the releases and the injunctions set forth in the plan. Right. So I understand your position. 9.4 should take you home. Right. But let me ask this hypothetical. Let's just tweak our facts just a little bit. So let's say the NLRB appealed the bankruptcy decision confirming the plan to the district court. The police moved for injunction enforcing the provisions of the plan. The district court concluded it had jurisdiction. Right. But this is the difference from our facts. But then relying on 9.4 of the plan, the district court interpreted the plan and did not, because of 9.4, grant the injunction. Are you with me? Yes. So there's no injunction? No injunction. OK. But an exercise of jurisdiction. Right. OK. Where are we in that circumstance? Are you still arguing jurisdiction or are you headed home happy? I suspect we would be here on a, the other side would probably appeal that order rather than the NLRB. Yeah, probably. Yeah. The fun is coming. I want to ask you, what's your position? Sure. I mean, I guess the question would be whether we had, we would not have suffered, the NLRB would not have suffered harm that would prompt it to appeal an order of that kind, because the NLRB would essentially be able to proceed in its administrative hearing on the grounds of such an order. So in short, I think the exercise of jurisdiction, we would have resisted at the briefing phase before the district court, but if the district court went ahead and issued an order in our favor, I think we'd be left in a position where it would be hard to frame an appeal, given the fact that we simply hadn't really suffered harm as a result of that order. So again, I would expect the other side to have appealed in that circumstance, and we'd probably be arguing the sufficiency of the decision under the preliminary injunction standard, potentially, in that circumstance. Thank you. But the NLRB, in any case, got itself involved in the case. In the, well, yes, I mean, the NLRB has been involved in this case, Your Honor, for, long before I showed up on the scene, yes. So this, yeah. But it had its say in the proceedings. It participated in the proceedings and took a position. Yes, the NLRB has taken, and again, I don't entirely know the, I mean, this again goes back long before I sort of arrived on the scene, but the NLRB takes the view that when there is a bankruptcy involving, where it has a claim for a potential back pay claim, that it should present itself as a creditor and file a proof of claim like any other creditor. That's not to say that the NLRB is just any other creditor. It has additional, there are additional rights that attach to the enforcement of the National Labor Relations Act. But in this case, it's thought to be representative of the litigants in the case. Well, the NLRB is, in fact, one of the litigants in this case. It is the, and in this case, it is the litigant. Right, that's the impression that I got. Yes. Yeah, that is correct. Could we talk about, let's say that, you know, you say in the reply brief, debtors could raise any issues about the effect of the releases in the NLRB proceedings, but that presents the possibility of conflicting rulings, right? And that's part of why you have people seeking injunctions. But so what's going to happen with this? The district court suggested the release wasn't automatically vacated. The NLRB could decide otherwise. How is that ultimately going to get worked out on petition for review from the NLRB and then separately an appeal up of the bankruptcy confirmation or administration of the bankruptcy plan? Well, I think debtors have multiple, and I don't want to sort of armchair quarterback their legal strategy here, but I do think they have multiple options. This wasn't one of them. They could have gone back to the bankruptcy court and sought a declaratory judgment from the bankruptcy court interpreting 9.4 of the plan, 9.2 as well of the plan. And if they had done that, again, we'd be in a different posture today. They could also assert the releases in the NLRB ALJ proceeding and at multiple points subsequent, in fact. Not only would they be able to assert the releases in the ALJ proceeding, in this ALJ proceeding to determine liability, they could later assert them in a compliance proceeding at the point where the NLRB attempted to collect on any back pay award. So, I mean, there are multiple points at which the releases could be asserted, any of which I think, you know, I don't think it should be too controversial, but at any of which, you know, there is a potential for preclusive effect to attach. So I'm not so sure that there is a risk of conflicting rulings here. It's just a question of, you know, how the preclusion question would get resolved if that were to arise in further litigation. There's another oddity here, which is your brief points out. There's all this case law talking about the jurisdictional bar for administrative exhaustion, but oral argument in a couple of recent Supreme Court cases, some justices have expressed doubt about whether it's jurisdictional. Maybe exhaustion is never jurisdictional. So does this have any effect on how we should think about whether courts sitting in bankruptcy have jurisdiction to adjoin administrative proceedings? Is there something that makes the core of this doctrine, you know, different from these other exhaustion contexts? Yes. I mean, I hesitate to respond to, I guess, to respond to oral argument as opposed to final Supreme Court decisions. But I would say that, you know, in this context, Congress, we have a clear statutory indication from Congress that the NLRB is to be the primary and exclusive body that passes on unfair labor practice questions. Right. But the Supreme Court is saying that that can be the case, and you could still have it be a mandatory claims processing rule that could be waived by the agency, that could be subject to equitable tolling. There are other differences between mandatory claim processing rules and jurisdictional rules that would still funnel it to the agency. Well, I suppose, again, it's difficult to respond to these kind of questions, which are outside the briefing and outside the issues directly raised in this case. Although the claims, I suppose it is important to keep in mind that the claims in this case are not the claims of any private parties. They're the claims of the NLRB itself and of the government itself. So the administrative process here is really for the agency to work out internally whether, in fact, there is a violation of the act, whether there's liability, and only then does an actionable sort of right to appeal or judicial review arise. So I think here the scheme is different from those other contexts that you're describing. Let me focus you on something that follows up on Judge Beavis's point, but might be a little more specific for you. So when you think about LEADM v. KINE, it allows for exceptions to 160. So that goes to the very point of whether we have a jurisdictional statute or not. If there are exceptions, right, it can't be, right, like Bowles v. Russell, right? What we know can't be any exceptions, right? Jurisdictional statute. So why wouldn't we come to the same conclusion here? I think this – Because I presume that's your point, right? Because 160, no, no, no, leave us alone. You can't interfere, right? And so I presume your point is it's jurisdictional, but what I've just explained would undercut that argument. And I want to know how do you get past that? Sure, and I see my time has expired, so I'll try to – No, no, no, it's just – I'll just run with it? Okay. Yeah. So this goes back to – I guess I begin by going back to something you said at the outset, Your Honor, which is that Myers v. Bethlehem Steel is about usurpation of power. And the reason that's relevant is because LEADM is an exception to the Myers rule. I don't think it's correct, to be honest, that Myers is really about usurpation of power. It's more about sequencing. Myers is an administrative exhaustion rule. Ultimately, Myers envisions, under the NLRA, judicial review. And LEADM v. Kynes actually turns on the question of whether judicial review is available or not. LEADM v. Kynes is a very narrow exception, one of very, very few to the Myers rule. But in Reed Bowles, there are no exceptions in jurisdictional statutes. That's why I raised it. And that's why I think maybe it's helpful to think of this more as an administrative exhaustion and a sequencing issue rather than truly a jurisdictional issue, although I think currently under the Court's current law, Myers, for instance, MCORP, this is a jurisdictional question that has been settled by the Supreme Court. Perhaps the sands are shifting currently, but this is a matter of settled law under both Myers and MCORP. But in any event, the LEADM exception turns on whether judicial review is available, and it really depends on a very, very specific fact pattern. This is a Section 8 case where judicial review is explicitly provided for under the NLRA. LEADM v. Kynes is a Section 9 of the NLRA case where judicial review is simply not available. There is one way for judicial review to occur following a Section 9 case. A Section 9 case is about bargaining unit determinations. And if it's an employer who's seeking judicial review in a Section 9 case, the employer can engage in what's known as a technical refusal to bargain, whereby they intentionally violate Section 8 of the NLRA and then raise the appropriateness of the unit determination, the bargaining unit determination, as a defense to the unfair practice charge. That gets that employer ultimately through the normal Section 8 sort of process before a court eventually. In LEADM v. Kynes, it's actually individual employees who are asserting a right, asserting that their rights have been violated by the NLRB's determination. And those individual employees are trapped by sort of two facts. First, Section 9, as I said before, precludes judicial review just as a matter of basic statutory law. And then secondly, because they're not a bargaining party, those individual employees are unable to engage in a technical refusal. So they're doubly blocked, basically, from obtaining judicial review. And I think for that reason, LEADM is a very exceptional case, a truly exceptional case that is very specific to the NLRA. I think it is still fair to interpret Myers and MCORP as asserting jurisdictional rules. And I think in this case it is fair to say that the district court under those rules lacked jurisdiction, although I do also think it's appropriate to think of this as purely a sequencing and an administrative exhaustion situation. You think of it as sequencing, as you've just alluded to? Yeah. Is it under that manner of process, would you say the district court had jurisdiction, but the district court could not act on, because it's a technical distinction, right, because the real question is our ab initio question about relief or harm. Is this something that falls within the ambit of something that can be heard? And then the question is, well, if it's relief that you can't grant, does that mean there's no jurisdiction? I think we probably both agree that that's not so. Right. So I presume that your mentioning of 160 here is both 160 for your argument, as well as 9.4 are equal and appropriate bases for claiming that the district court should not have acted in the grant of the injunction. I certainly agree that section 10 of the NLRA 160 and section 9.4 of the bankruptcy plan provide sufficient grounds and independent grounds for finding that the district court lacked the authority to rule as it did or to pass on this question. Although given that section 10, as interpreted by Myers, is a matter of Supreme Court decisional law, I would say that the two are not equal. Right. Yes. Fair. Probably not equal, but, well, equal in the sense that you could, from your perspective, prevail on either base. Yes. Independent. Yes. One more question regarding the NLRB. Doesn't the plain language of the bankruptcy plan prevent the NLRB from fixing claims or addressing claims in an administrative proceeding? Quite the opposite. Section 9.4 specifically permits the NLRB to fix a claim against any releasee in an administrative proceeding under the NLRA, which is language, by the way, that was not drafted by the NLRB. It was drafted by debtors in response to the NLRB's objections that it wouldn't be able to then, under the releases as originally proposed, the NLRB would not be able to proceed in its administrative hearing. So that language specifically authorizes the NLRB to proceed. That was not the sentiment of the district court in this case, was it? Again, I think that's fair to say, Your Honor, and it's quite confusing how the district court arrived at that conclusion. I think 9.4, the only way you can get to the district court's order in this case is to excise 9.4 from the bankruptcy plan, and I think that's effectively what the district court has done here. Thank you. Thank you. So unless there are any further questions from Your Honors, I also have 3 minutes for rebuttal. Or am I? I'm going to take it away from you. You'll take it? Okay. Thank you. May it please the Court. Michael Sirota, Colshott's PC, on behalf of the appellees. First, this is not Myers. Myers involved an immediate application for an injunction when served with a complaint for unfair labor practices. Myers applies where the district court is being asked to substitute for the board as the tribunal to hear and determine what Congress declared the board exclusively should hear and determine in the first instance. That's not what happened here. Judge Niels is not being asked to supplant the board or that process and decide the joint single employer issue. That is the only issue that remains open in the dispute between the debtor and the NLRB. Myers speaks broadly about the district court lacked the power to do so. He uses the word terms of power. He uses terms of jurisdiction. Justice Brandeis, the district court was without the power to join the board from holding hearings. That grant of exclusive power is constitutional. The board has jurisdiction as long as the complaint concerns interstate commerce. So Myers understood itself to be issuing a jurisdictional ruling. And NCORP speaks in jurisdictional terms. So maybe it's a little inconsistent with exceptions, lead them, et cetera. But as a lower court, we have to follow what the Supreme Court is telling us. Why doesn't that resolve the case? Because neither Myers nor NCORP say that the board can go and violate a federal bankruptcy court order. It doesn't say you can. The question is what's the remedy for it. Now, lead them. If there's no relief anywhere else, maybe then you can do something. But otherwise, the ordinary course is, say, go through the agency proceedings and then challenge it in court, challenge a petition for review of the agency proceedings. So the question is about the relief. That is the question you asked of my adversary, which is the potential for conflicting rulings. It's not conflicting rulings. It's absolute chaos. All right. Except we have a provision in the plan that deals with this. At the end of Section 9.4, there's a sentence that says, neither this Section 9.4, the plan, nor any confirmation order, shall operate as an injunction with respect to or otherwise limit or enjoin the NLRB rights under the NLRA and exclusive jurisdiction thereunder, exclusive jurisdiction thereunder, to fix a claim against any releasee. So to the extent there's a potential for conflict, 9.4 is saying you go ahead, NLRB. There is a dispute between us and the NLRB on what is captured under the defined term fix a claim. And when the NLRB went forward, and let's just put this in perspective, the NLRB and ULP proceedings have been proceeding for 10 years. We have not said word one with respect to those proceedings, unlike these other cases. We're all attempted to halt the NLRB proceedings. Ten years we've been litigating. A dispute arises as to what is meant by fix the claim and whether it captures joint and single employer liability. That was the dispute. We raised it with the NLRB. They ran into bankruptcy court for a clarification of what that meant. The bankruptcy court, because they have seven appeals pending, said we're divested of jurisdiction. It's before the district court. So what did the NLRB do? Instead of abiding by a federal bankruptcy court order, their own seven appeals, they said forget it. Let's just go and make believe the bankruptcy order doesn't exist. Let's violate it, and let's go back to the ULP proceeding. That's not what ‑‑ Maybe the NLRB made a mistake. Maybe it was right. But I thought it was a very powerful beginning to the NLRB's reply brief to say appellees can't cite a single case in a bankruptcy court or appeal from a bankruptcy someone enjoined a non‑debtor. Enjoined an agency in proceedings involving a non‑debtor. We're not even talking about the debtor here. So why can't you find any precedent for this if this is such obvious law? Well, I'm not saying that it's obvious law, and they have not cited one case, which stands for the proposition that they can violate a bankruptcy court order that's on appeal. The bankruptcy court order is on appeal. I'm not saying they can violate it. The question is, is the remedy an injunction to stop the agency proceedings as opposed to review afterwards? There is no other remedy. Review afterwards, then we would have two tracks. And that's, I thought, your earlier question on conflict, which I call chaos. You would have seven bankruptcy appeals going forward before the district court judge. The interpretation of the plan, the enforceability of releases and injunctions, this circuit is all too familiar under millennium labs with the ability for a bankruptcy court to issue injunctions and releases as part of contributions made in a plan of the organization. The contributions made by Care Realty and the other affiliates in this case were about $40 million. And in exchange for that, they received releases and an injunction. If the district court doesn't think that those injunctions and releases were justified, then the district court will reverse and will be back before this circuit. I'm sure either we'll be back as an appellate or they'll be back. But the issue is the NLRB shouldn't go off in violation of an order, and Myers and MCORP don't stand for that proposition. On top of the fact that the only remedy they're now looking for as part of this joint and single employer liability per their briefs is they want non-monetary relief. Non-monetary relief, post signs, cease and desist, these are all issues for an appeal. Now, 28 U.S.C. 158A gives district court's jurisdiction to hear appeals from final judgments, orders, and decrees. But this isn't itself an appeal. This is an injunction that's separate from the bankruptcy appeal. So how did the district court get jurisdiction to hear it? Does this somehow get melded together? I mean, just because it's the same case, we have to look whether there's jurisdiction over this and, you know, this injunction is distinct from the bankruptcy appeal. It's 158A and 28 U.S.C., Section 1334. The only court, the only court that has jurisdiction over the appeal, the appeals, is the district court. Right. Not the administrative law judge. Not talking about, well, it's grant the appeal, but why does this injunction fall within that? Why can you tack it on, even though it was issued, decided separately? It's the only way for the district court to protect the integrity of the appeals over which it has exclusive jurisdiction. Otherwise, going back to your question. What gives it exclusive jurisdiction? 28 U.S.C., Section 1334 and 158A1. No other court has exclusive jurisdiction. Section 1334 said no other court does, but the Supreme Court said, it already is not a court, not subject to that provision. I'm talking about the jurisdiction of the appeals that are before the district court, that if the NLRB has its way. Throw it around in circles. Then why is the injunction? Basically, your argument is, everyone should always be able to get an anti-suit injunction, right? So, but lots of areas of law, there aren't anti-suit injunctions. Lots of times, parallel proceedings go on in state court, in federal court. You have races to the courthouse, et cetera. Why an anti-suit injunction here in the face of 29 U.S.C. 160A? Because otherwise, it guts the appeal before the district court. It gives the NLRB a license to ignore a bankruptcy court order on appeal that it invoked and will provide for, as I was saying earlier, two tracks. The New Jersey track, with respect to the district court appeals, and then this ALJ proceeding, where we would then go in and have to argue plan issues in two different forum. Of course, if the ALJ judge rules against us, we go before the board. If the board rules against us, we go before either the federal or second circuit, all while the appeals are playing out in the third circuit. That can't possibly be what Myers and MCORP ever envisioned when it came to the NLRB. They may not like it. Here's what I don't understand about that, about the exchange you're having with Judge Bevis. When you look at what the bankruptcy court did, and the question arises, how can this injunction impede the NLRB? There's a quote from the confirmation opinion about 9.4 and the scope of 9.4, separate and apart from the injunction. What I'm quoting from is page 24. It's about this issue of the NLRB and the releasees. While the plan in its original form may have been read to enjoin the NLRB's rights to fix a claim against any releasee in the ALJ proceedings, the debtor's second modifications to the plan clarify that the third-party releases are not meant to function in this manner. How are we to read and understand that? I think that has to be read, Judge, in context with the bankruptcy court's clarification order, which pointed out specifically that if the NLRB thought that joint and several liability was somehow captured within that exception, they should have raised it at confirmation, which they never did. And Judge Steckroth made that crystal clear in his clarification ruling. So we have an honest dispute as to exactly what's captured by the meaning of the injunction and release. They sought clarification. The motion was denied. It's all embedded in their appeals in the district court. It's not before this court. Those issues are not specifically before this court because the district court hasn't even had the opportunity to hear those issues on appeal. So if we read 9.4 as the NLRB does, how do you get around that reading of the language, the plain language of 9.4? 9.4 was designed for the NLRB to fix their monetary claim, which they've been doing for 10 years uninterrupted. Can you fix a claim without fixing it against a particular party? They've been doing that for 10 years, Judge. They've been fixing the claim in the NLRB proceedings for 10 years. In fact, the letter that was filed with the court yesterday, notwithstanding the injunction, they plan to continue to move forward on March 27th. So the dollar amount of their claim will get fixed, and it's envisioned that it will then flow through the waterfall in the plan of reorganization unless that plan on appeal, on a full record, is somehow invalidated or reversed. That's not the issue most respectfully before this court today. What's before the court today is whether the NLRB on this record, which doesn't remotely resemble Myers or Emcorp, on this record can go off on their own and proceed in violation of a bankruptcy court order that's under the jurisdiction to be reviewed by the district court. Maybe you can clarify one thing for me, Mr. Serrano. On what specific grounds did the district court have jurisdiction to enjoin the NLRB? I believe under 28 U.S.C. 158A and 1334. Does that grant the district court the jurisdiction to do what it did? I believe it does, and I believe the district court has the obligation to protect the integrity of orders that are violated. What order was violated? The bankruptcy court's confirmation order. Your Honor, they went back to the bankruptcy court, and they asked the bankruptcy court to clarify its opinion. By they, you referred to the NLRB. The NLRB, I apologize. The NLRB went back to the bankruptcy court and said we have a dispute as to the language of the plan. And the bankruptcy plan says. There's nothing wrong with that. In fact, in the plan is a provision that says the bankruptcy court is the exclusive jurisdiction to determine interpretation of the plan and implementation of the plan. No problem with that. So they went back to the court. They got an adverse ruling. And the next move they made was simply to ignore it. May I ask you what that adverse ruling was? Yes. The bankruptcy court determined that it didn't have jurisdiction to issue a clarifying. The NLRB did not have jurisdiction? No, that the bankruptcy court didn't have jurisdiction to issue the clarifying opinion that was requested by the NLRB because it was divested of jurisdiction because the appeals that were filed are now vested in the district court. The bankruptcy court was saying I can't touch this motion because there's an appeal pending. Everything is now before the district court for ultimate disposition. There was no bankruptcy court injunction that affected the NLRB, right? Bankruptcy court, not district court. There was no bankruptcy court injunction that adversely affected the NLRB, right? There's the injunction provision in the plan of reorganization that Your Honor has been citing to, and there's a dispute as to what is captured by that language, but there's only one issue that's in debate, and that is whether it's the joint and single employer issue. Nobody else has disputed the NLRB going forward, Judge, for 10 years in litigating their claims. Should we consider the district court's injunction as an exercise of ancillary jurisdiction under 158, or should we consider it differently? I think you should consider it as ancillary jurisdiction and straight exclusive jurisdiction given the appeals that are pending before that. Is that ancillary jurisdiction to issue an injunction of some sort? That's what the district court did. 158 says jurisdiction to hear appeals from final judgments, orders, and decrees. It doesn't say anything about the ability to enjoin. What provision allows it to add injunctions to appeals? I would say 1334. It's the only way, Your Honor, that the district court can protect the integrity of the appeals. Could you clarify that 1334? 28 U.S.C. 1334B says notwithstanding any act of Congress that confers exclusive jurisdiction on a court or court other than district courts, and NLRB is not a court, district courts shall have original but not exclusive jurisdiction. And you just told us this was exclusive jurisdiction. Exclusive jurisdiction over the appeals. There's no other court that has jurisdiction over the appeals that are pending before the district court. Okay. I don't see any reference to ancillary. I don't see any reference to injunctions. 1334B says it's not exclusive. So why then, if it's supposed to be original but not exclusive, why can it enjoin an agency? Because there is no other way to protect the ---- So you don't have any text that says, and may issue appropriate injunctions or decrees in support of its jurisdiction or to prevent parallel litigation. We could not find a case, Your Honor, that dealt with an agency that violated a court order, a bankruptcy court order, placed that order on appeal. We could not find one case that dealt with that issue. Okay. Because agencies typically don't violate court orders. All right. Myers and Emcourt from the Supreme Court support them. The best case on your side is Leadham v. Kine, right? And Leadham, the premise of the Leadham argument is, now or never, if we don't get this injunction, we will never get review in a court. That was what happened in Leadham. So this case comes down to, is there, on your theory, is there another way to review this order? Now, your friend on the other side said there was a way, that after the NLRB takes action, we can have, you know, review of administrative action under the Administrative Procedure Act. Why isn't that enough? Because it's destined or potentially leads to conflicting rulings in two different circuits. That's exactly what they're promoting, and that's exactly if this Court were to reverse the judgment. It sounds to me like you want to change 1334, which says, original but not exclusive to read, shall have exclusive jurisdiction. But we can't delete original but not. It should be original, exclusive jurisdiction, not original but not exclusive on your reading. Your Honor, you had said that Leadham was sort of our only safety valve, and I'm going to respectfully disagree with that. I think the superior forwarding decision in the Eighth Circuit. Okay. Do you have a Supreme Court authority that should temper the way we read Myers and Emcourt? I don't have Supreme Court authority that tempers the way you read it. I just suggest, respectfully, those holdings don't apply here. Which Eighth Circuit decision do you think is the one that reads that properly? Superior forwarding. Okay. Just to clarify one point. Does the plain language of the bankruptcy plan prevent the NLRB from addressing claims in an administrative procedure? Yes, as to the joint employer claim. That is the dispute. It prevents the NLRB from participating. That's the dispute that we have with the NLRB under the language that says, fix the claim. That's the dispute that caused them to go to the bankruptcy court and is before the district court that we hope will get resolved. Is that a current issue, or you say that's definitely the NLRB cannot participate? The NLRB cannot participate under our reading. They read it differently. That's a dispute that's raging before the district court. And will be adjudicated when the appeals are heard. But as I said earlier, when the NLRB went for that clarification to the bankruptcy court, their motion was denied. Is that something that we have to address in this case? I mean, you say it's raging. It's affecting this case. I'm suggesting you don't have to address it in this case because that's not what's before this court. It's before the district court on appeal. What has to be addressed in this case. Well, but they did take a position in this case. They've taken a position for sure. How do we, how should we think about the fact that the injunction obtained constrains the NLRB, and then how does that, how are we to think about that based on my discussion with your colleague on 160? How do we resolve that? I think, I think your honor that eventually, eventually the issue of what that plan means and whether or not it permanently constrains the NLRB will play out. And I say that because when the appeals before the district court go full  The district court has pending before a motion for equitable mootness. If that motion is granted, I'm confident the NLRB will have me back before this court on that issue. If the district court affirms the bankruptcy court, then there's no longer that bankruptcy court prohibition from a jurisdictional perspective, and they or we can go right back to the bankruptcy court and say, we have a dispute as to this language. Can now you clarify it since you don't have a jurisdictional hurdle? And the bankruptcy court can say, NLRB, you're right. And they go right back and start their joint and several litigation against care realty to get non-monetary relief that's impossible to grant because the facilities have been transferred for eight years. You mentioned the superior forwarding case. It's not in your table of authorities. I managed to pull it up. And that was a case in which the debtor had filed for bankruptcy, and then there were unfair labor practice charges against the debtor. And the whole thing of the court was if the NLRB is going to take some action that would threaten the debtor's estate. So here, charges directly against the debtor. And I did take the thrust of the NLRB's brief to be you don't have any case in which any action taken against someone other than the debtor has been enjoined. Your Honor, the action they're taking against care realty is an action against the party that funded the exit out of a Chapter 11. So the damage to our estate is a party that obtained a release and an injunction in exchange for $8 million, has now paid $8 million in order to reorganize senior living facilities that we sold eight years ago, and they want to be able to pursue care realty as if that never happened. That's damage to the bankruptcy estate because it's effectively looking to unwind the plan without going through the appellate process. There is no harm, no harm whatsoever to the NLRB to await the disposition of these appeals, to await the bankruptcy court's clarification of the language, and they may end up being able to assert their joint and several claim at some point. That's not what is before the court today. Thank you very much. I think the most effective use of my time on rebuttal would be to assure your Honors that the questions raised about NLRB's v. Superior forwarding as debtor's best case, I think, are warranted. I would agree, the NLRB would agree that Superior forwarding probably is their best case after Liedem v. Kine, and that is, I suppose, damning with faint praise. Superior forwarding has a number of flaws with it, which actually make it inapplicable here. First and foremost, it is a pre-MCORP case. It may not on Westlaw or Lexis have the designation as having been formally overturned, but I think that hangs as a cloud over the continuing validity of Superior forwarding in a pretty serious way. Were that not enough, even the Eighth Circuit in a later decision, EEOC v. Rathpacking, backed away from the Superior forwarding rule. I think the Superior forwarding rule, if it had any continuing validity, really is limited to a very narrow circumstance in which, factual circumstance, in which a huge number of grievances, 52 grievances, sort of, which were pending that threatened the direct assets of a bankruptcy estate. You know, that rationale has at least some footing in the Supreme Court's Bill Disko decision, but again, I think because of Myers, because of MCORP especially, Superior forwarding is on the ropes, to put it mildly. I also would like to address just a few kind of minor, not minor, significant factual points, actually, that my colleague on the other side raised. First, the bankruptcy court's confirmation order, although technically is a ruling that went against the MLRB, I think it's crucial to note that the actual holding in that order is that the bankruptcy court lacked jurisdiction, not that the NLRB's asserted interpretation of the bankruptcy plan was inaccurate. So in fact, there hasn't been a ruling against the NLRB on the substance of the bankruptcy plan, contrary to my friend on the other side's characterization. Would you articulate the NLRB's purpose or ultimate goal in this case? Yes. In the case against Care Realty, ultimately the NLRB intends to determine whether, in this case, it's to vacate the preliminary injunction issued by the district court below to allow the NLRB's administrative hearing to determine liability against Care Realty to proceed. That is what the NLRB is seeking, I think, with a remand to the lower court with instructions to dismiss. But it didn't gain that purpose, did it? It didn't gain that goal? The NLRB's purpose in this appeal is to overturn the preliminary injunction below. And I was asking, did it achieve that or not? Well, we haven't gotten a ruling. We haven't gotten a ruling from your honors as yet. So, I mean, hopefully we will achieve that. That is our hope today. So, to my mind, you've neutered superior forwarding. What is the avenue for review here? You know, LEADM is really one of these, there has to be Article III supervision over this somehow. But how do we review this if, later stage, maybe we think the agency, the board, fixed a claim incorrectly? So, tell us about what the appropriate manner is that will ensure Article III supervision. Yeah, this is sort of a plain vanilla Section 8 case under the NLRA. So, appellants, or appellees, rather, would have their choice of circuit courts to seek review from, ultimately, on a final board determination that Care Realty was, in fact, a single and joint employer. So, judicial review is available here just like in any other NLRB unfair labor practice case. The case has been going on for quite a while. What's the current status? The current status in the ULP case is that there is a dispute over superior forwarding. That is pending in the District of New Jersey, that's been moved from the District of Connecticut. The NLRB unfair labor practice, the ALJ presiding over the NLRB unfair labor practice case has heard the bulk of the liability case as against the facilities. We are just at the point where the hearing is to turn the page to look at single and joint employer, although the merits of liability as against the facilities is not fully resolved and is still, to a degree, waiting on the outcome of the dispute over the subpoena, currently pending in the District of New Jersey. So, the hope is that we are sort of nearing the finish line. It's within sight, but there's still considerable ways to go. Close to the finish line. I think it's within sight, but we still have a ways to go. Well, on that note, we'll wish you both a good day and thank you for your arguments.